# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| WALTER O. HEILIG, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 4:14-CV-2102 NAB |

## MEMORANDUM AND ORDER

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of Walter O. Heilig's application for a period of disability and disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.     Issues for Review**

Heilig presents one issue for review. Heilig asserts that the administrative law judge (ALJ) erred by failing to identify and resolve conflicts between vocational expert evidence and the Dictionary of Occupational Titles[1] (DOT) and the Selected Characteristics of Occupations[2]

---

[1] The Dictionary of Occupational Titles ("DOT") is a guide from the United States Department of Labor regarding job ability levels that has been approved for use in Social Security cases. *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (citing 20 C.F.R. § 404.1566(d)(1); *Porch v. Chater,* 115 F.3d 567, 571 (8th Cir.1997)). "The DOT is the

1

(SCO). The Commissioner contends that there is no conflict between the DOT and SCO and the vocational expert's testimony.

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. § 404.1520(e). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

---

Commissioner's primary source of reliable job information. The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled." *Fines*, 149 F.3d at 895 (internal citations omitted).
[2] The Selected Characteristics of Occupations is a companion volume to the DOT.
[3] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physician;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

**III.   Discussion**

   **A.   ALJ's Decision**

In this case, the ALJ found that Heilig had the severe impairments of chronic obstructive pulmonary disease, emphysema, bilateral osteoarthritis of the feet, plantar fasciitis, bilateral elbow pain secondary to epicondylitis and osteoarthritis, bilateral osteoarthritis of the shoulders, kidney cyst, and depression. (Tr. 115.)  The ALJ determined that Heilig had the RFC to perform light work[4] with the following limitations:  (1) frequently climb ramps and stairs; (2) occasionally climb ladders, ropes, and scaffolds; (3) avoid even occasional exposure to extreme heat and humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as dangerous machinery, uneven ground, and unprotected heights; (4) limited to simple and routine work; (5) must be able sit or stand at will while remaining at the work station (involving no loss of production); and (6) must be able to take up to three unscheduled restroom breaks

---

[4] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting and carrying of object weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially of these activities."  20 C.F.R. 1567(b).

4

during the work day. (Tr. 119.) The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a).

At the administrative hearing, the vocational expert (VE) Denise Weaver testified that a hypothetical individual of Heilig's age, education, and work experience with the RFC found by the ALJ could perform the work of a bagger and silver wrapper. (Tr. 184.) The VE stated that her opinion was based on "the description of the occupations and the fact that they are not on an assembly line but they don't have strict production requirements in those particular jobs." (Tr. 184.) The VE also testified that the DOT did not have anything that addresses sitting and standing and her opinion was based on a review of "the descriptions as stated by the DOT and my professional experience." (Tr. 184.)

In her opinion, the ALJ determined that the vocational expert's testimony was consistent with information contained in the DOT and that regarding the limitations not addressed by the DOT, such as the sit/stand option, the VE's testimony was based on her education and experience in the industry. (Tr. 127.) Based on the VE's testimony, the ALJ found that considering Heilig's age, education, work experience and RFC, he was capable of making a successful adjustment to other work that exists in significant numbers in the economy and was not disabled under the Social Security Act. (Tr. 127.)

### B.     Legal Standard regarding Vocational Testimony

The testimony of a VE should be consistent with the DOT. *See* Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 at *2 (Sept. 19, 2012). Evidence from a VE can include information not listed in the DOT. SSR 00-4p at *2. This is because the DOT lists "maximum

requirements of occupations" and "not the range of requirements" at any particular job or place. *Id.* at *3.

"A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (citing *Welsch v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014)). First, the ALJ must ask about any possible conflict with the DOT. *Id.* at 989. If there is an apparent unresolved conflict between the VE testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict and resolve the conflict by determining if the explanation given by the VE provides a basis for relying on the VE testimony rather than the DOT information. *Id.* at 989-90 (citing SSR 00-4p at 2-4). "Absent adequate rebuttal, however, the VE testimony that conflicts with the DOT does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Id.* at 990.

**C.  Analysis**

Heilig contends that there are two conflicts between the VE's testimony and the DOT. First, the DOT and SCO do not describe a sit/stand option and a sit/stand option conflicts with the light exertional category as the term is used in the DOT. Second, Heilig asserts that the DOT and the SCO do not describe extra breaks, and extra breaks conflict with the need to be able to perform the jobs described. The Commissioner responds that there is no conflict with the DOT.

In an unpublished decision[5], the Eighth Circuit found that a vocational expert's testimony that certain jobs allowed the claimant to alternate between sitting and standing did not contradict

---

[5]Unpublished decisions are not binding precedent, "but they are relevant insofar as they have persuasive value." *White v. National Football League*, 756 F.3d 585, 595 (8th Cir. 2014); 8th Cir. R. 32.1A (parties may cite an unpublished opinion of the court if the opinion has persuasive value on a material issue and no published opinion of this court would serve as well).

the DOT, despite the lack of information in the DOT regarding the same. *Reynolds v. Barnhart*, 36 Fed. App'x 575, 576 (8th Cir. June 14, 2002) (unpublished). In *Reynolds*, the Eighth Circuit found that the vocational expert's testimony served as a supplement to the DOT's information and the ALJ was entitled to accept the vocational expert's testimony and base his decision upon it. *Id.* Two cases in this district, post-*Moore*, address the presence of unresolved conflicts between the vocational expert's testimony and the DOT in cases involving the sit/stand option and restroom breaks. *See Albright v. Colvin*, No. 2:14-CV-97 HEA, 2016 WL 98169 at *7-8 (E.D. Mo. Jan. 8, 2016) (court found VE's testimony did not conflict with the DOT and if there was a conflict it was properly resolved by the ALJ regarding DOT's failure to address sit/stand options in job descriptions); *McFarland v. Colvin*, No. 2:14-CV-42 TCM, 2015 WL 2383461 at *24-25 (E.D. Mo. May 19, 2015) (VE's testimony about sit/stand option and restroom breaks in jobs provided a sufficient reasonable explanation regarding potential conflict between DOT and VE's testimony based on her experience).

Based on a thorough review of the evidence in the record as a whole, the Court finds that the ALJ could rely upon the VE's testimony as substantial evidence. The Court does not find a conflict between the DOT and the vocational expert's testimony. The DOT is not a set of rigid standards. "The DOT cautions itself that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. In other words, not all jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010).

Even if there was a conflict, the VE's testimony provided a reasonable explanation for any conflict between DOT regulations and her testimony. First, the ALJ questioned the VE regarding a possible conflict between the DOT description of the occupations and the RFC

requirements of a sit/stand option and three short unscheduled restroom breaks. In response to the ALJ's questions, the VE testified as follows:

> Q: If an individual needed to be able to sit and stand at will for brief periods of time in order to make positional adjustments not to exceed a few minutes would that affect the base of any of those jobs?
>
> A: Either the silver wrapper, the bagger, the bottling line attendant might be the only one where it would be possible that they would not have as much, but they are, they are simply preparing bottles for packing and shipping, so there, there would likely by review of the description, there would likely be the ability to sit and stand in all three of those last positions I gave.
>
> Q. Okay. What if an individual in addition to everything else we talked about needed to take up to three short unscheduled breaks during the workday, just long enough to visit the restroom and come back, would that individual be able to sustain employment?
>
> A. If they're fairly short breaks, I would say, in my opinion, the bottling line attendant may be more difficult to do, to do that because of their need to review and handle things on an assembly line type of thing. I believe the bagger and silver wrapper would have more of an opportunity to be able to do that and still maintain the job.
>
> Q. What is your opinion based upon?
>
> A It is based on the description of the occupations and the fact that they are not on an assembly line but they don't have strict production requirements in those jobs.
>
> Q. If I were also—well, I understand that the DOT does not have anything that deals with what I asked you about sitting and standing is that correct?
>
> A. That is correct..
>
> Q. And what's your opinion based upon there?
>
> A. It's based on my review of the descriptions stated by the DOT and my professional experience.

(Tr. 183-84.) Assuming there was a conflict, the VE's testimony provided a reasonable explanation for the conflict between DOT regulations and her testimony. It is reasonable for the ALJ to rely upon the VE's professional experience in support of her testimony. The ALJ's reference, in her opinion, to the VE's "education and experience in the industry" rather than her professional experience is of no consequence. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996.) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency probably has no practical effect on the outcome of the case."). Further, Plaintiff has not identified what additional information the VE was required to produce that would serve as a reasonable explanation. The Court also notes that Plaintiff's counsel did not question the VE about these potential conflicts during the administrative hearing.

IV. **Conclusion**

Based on the foregoing, the Commissioner's final decision is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 13.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 12th day of February, 2016.

                                             /s/ Nannette A. Baker
                                             NANNETTE A. BAKER
                                             UNITED STATES MAGISTRATE JUDGE